IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

GREGORY ROWELL                                                    PLAINTIFF

v.                                          CIVIL ACTION NO. 3:14-cv-00250-GHD-DAS

COMMISSIONER OF SOCIAL SECURITY                                  DEFENDANT

MEMORANDUM OPINION

Presently before the Court is a Social Security appeal filed by Plaintiff Gregory Rowell

("Rowell"). Rowell seeks a finding that he is disabled and entitled to disability insurance

benefits and/or supplemental security income benefits under the Social Security Act. For the

reasons that follow, this Court finds that the most recent Social Security decision should be

affirmed.

*A. Procedural Background*

Rowell originally asserted he became disabled on January 1, 2006, resulting from the

onset of multiple impairments including a lumbar disorder, history of right ankle fracture,

obesity, a history of hypertension, depressive disorder, personality disorder, and history of drug

and alcohol dependence. Rowell first filed for disability insurance benefits and supplemental

security income benefits on December 3, 2007. Two administrative law judges ("ALJs") heard

his claim. Rowell seeks judicial review of the most recent ALJ decision.

On June 10, 2009, ALJ Jonathan H. Leiner denied Rowell's claim, finding that based on

Rowell's application for a period of disability and disability insurance benefits, Rowell was not

disabled under Sections 216(i) and 223(d) of the Social Security Act, and that based on Rowell's

application for supplemental security income, Rowell was not disabled under Section

1614(a)(3)(A) of the Social Security Act. The Appeals Council later remanded ALJ Leiner's

decision so that he could consider updated medical evidence, obtain evidence from a medical expert to clarify the nature and severity of Rowell's impairments and Social Security Ruling, give further consideration to Rowell's maximum residual functional capacity ("RFC"), and obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Rowell's occupational base.

On July 29, 2011, ALJ Leiner again denied Rowell's claim. The Appeals Council subsequently remanded that decision for failure to grant a supplemental hearing upon the request of Rowell's representative after receipt after the hearing of the interrogatories of a non-examining physician medical expert. The Appeals Council instructed the ALJ on remand to offer Rowell the opportunity for a supplemental hearing and to, if warranted, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Rowell's occupational base.

The Social Security Administration assigned the case to ALJ Paul Reams (hereinafter, the "ALJ"), who issued a partially favorable decision on September 26, 2013. The Appeals Council denied Rowell's subsequent request for review of the ALJ's September 26, 2013 decision, thus rendering it the final decision of the Commissioner of Social Security in Rowell's case and the decision upon which this appeal is based.

## B. Standard of Review

"The Social Security Act defines disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than [twelve] months.'" *Sun v. Colvin*, 793 F.3d 502, 507 (5th Cir. 2015) (quoting 42 U.S.C. § 423(d)(1)(A)). To determine

whether an individual is disabled, the ALJ must go through the five-step process set forth in 20

C.F.R. § 404.1520(a) to determine the following:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working);
>
> (2) whether the claimant has a severe impairment;
>
> (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1;
>
> (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and
>
> (5) whether the impairment prevents the claimant from doing any other work.

*Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). The claimant has the burden of proof on

the first four steps, but at the fifth step, the burden shifts to the Commissioner. *Id.* At any step in

the analysis, if the ALJ determines the claimant is or is not disabled, the analysis stops and the

decision is made. 20 C.F.R. § 404.1520(a)(4).

"[A]fter any final decision of the Commissioner of Social Security made after a hearing

to which [an individual] was a party," that individual "may obtain a review of such decision by a

civil action commenced within sixty days after the mailing to him of notice of such decision or

within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g).

"This [C]ourt reviews the Commissioner's denial of social security benefits only to ascertain (1)

whether the final decision is supported by substantial evidence and (2) whether the

Commissioner used the proper legal standards to evaluate the evidence." *See Giles v. Astrue*,

433 F. App'x 241, 244 (5th Cir. 2011) (per curiam) (citing *Newton v. Apfel*, 209 F.3d 448, 452

(5th Cir. 2000)). "Substantial evidence is that which a reasonable mind might accept to support a

conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d

3

842 (1971)).  " 'It is more than a mere scintilla and less than a preponderance.' " *Id.* (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)).  In such a determination, the Court must "scrutinize the record to determine whether such evidence is present" and "may not reweigh the evidence, try the issues *de novo*, or substitute [its] judgment" for that of the Commissioner. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted), *cert. denied*, 514 U.S. 1120, 115 S. Ct. 1984, 131 L. Ed. 2d 871 (1995); *Newton*, 209 F.3d at 452.  "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461.

*C.  Analysis and Discussion*

Rowell appeals the final decision of the Social Security Administration, contending that this Court should reverse and remand for a new hearing or reverse and render for payment of benefits as of February 26, 2007, Rowell's fiftieth birthday.[1]  After the Court reviews the hearing and decision of the ALJ, the Court will examine each of Rowell's specific arguments.

**Administrative Hearing**

During the hearing, the ALJ took Rowell's testimony.  Rowell testified that he graduated from high school and was in regular classes. R. at 111.  He further testified that the last job he held was eight or nine years prior to the hearing and was on a brick masonry crew. *Id.*  Rowell testified that he stopped working because "[his] back would give out on [him]" and "[he] was having a lot of problem[s] with a coworker." *Id.* at 112.  He further testified he could not pick up weight without severe pain in his lower back and hip or walk without lower back pain. *Id.* at 113.  Rowell additionally testified that though he had a history of drug and alcohol use, he had not used drugs or alcohol for approximately six years prior to the hearing. *Id.* at 115.  He testified that he last received treatment for mental problems in November 2011 when he was still on Medicaid, but that Medicaid was cut off after that and he could not afford to get mental

---

[1] This Court heard oral argument in the case *sub judice* on October 19, 2015.

4

treatment otherwise. *Id.* at 121. He also testified that he was diagnosed as bipolar and heard voices in his head. *Id.* at 122. At the close of Rowell's testimony, the ALJ briefly took the testimony of Rowell's brother, Stanley Rowell, who testified consistently with Rowell's testimony that Rowell had stopped using alcohol and drugs several years prior to the hearing. *Id.* at 127.

Finally, the ALJ questioned the vocational expert (the "Vocational Expert") about Rowell's past work and present capabilities. The Vocational Expert testified that Rowell's past work consisted of very heavy construction work and heavy material handling. *Id.* at 129. The Vocational Expert further testified that given Rowell's physical capabilities, Rowell would not be able to perform any past work and had no transferable skills. *Id.* at 129–30. The ALJ then questioned the Vocational Expert as follows:

> [I]f we had an individual of Mr. Rowell's age, education, and work experience limited to light work, who was able to do routine, repetitive tasks[,] with only occasional interaction with the public and only interaction with coworkers, would there be jobs available in either the regional or national economy such an individual would still be able to do?

*Id.* at 130. The Vocational Expert answered "yes" and then listed positions that Rowell might be able to perform: "housekeeping cleaner," "wiper," and "small products assembler." *Id.*

### The ALJ's Decision

On September 26, 2013, the ALJ issued a partially favorable written decision, finding that Rowell was disabled as of February 26, 2012, but not the alleged onset date of January 1, 2006. The ALJ went through the five-step analysis set forth in 20 C.F.R. § 404.1520 and found as follows. First, the ALJ found that Rowell met the insured status requirements of the Social Security Act through March 31, 2009. Second, the ALJ found that Rowell had not engaged in substantial gainful activity since the alleged onset date. Third, the ALJ found that since the

alleged onset date, January 1, 2006, Rowell had the severe impairments of a lumbar disorder, history of right ankle fracture, obesity, a history of hypertension, depressive disorder, personality disorder, as well as history of drug and alcohol dependence. Fourth, the ALJ found that since the alleged onset date, Rowell did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Fifth, the ALJ found that these conditions limited Rowell's RFC to the performance of light work with additional limitations and that Rowell could perform only routine, repetitive tasks, with occasional interaction with coworkers. The ALJ concluded that these limitations precluded Rowell from performing his past relevant work, because the demands of his past relevant work exceeded the RFC. The ALJ also concluded that prior to the established onset date of disability, considering Rowell's age, education, work experience, and RFC, Rowell was capable of making a successful adjustment to other work that existed in significant numbers in the national economy and thus that Rowell was "not disabled" under the Medical-Vocational Guidelines, 20 C.F.R., Part 404, Subpart P, Appendix 2. The ALJ further concluded that prior to February 26, 2012—the date Rowell's age category changed from an individual closely approaching advanced age to an individual closely approaching retirement age—jobs existed in significant numbers in the national economy that Rowell could have performed, but that once Rowell reached the age category of an individual closely approaching retirement age, no jobs existed in significant numbers in the national economy that Rowell could perform and that based on his age, education, and work experience, he was thus "disabled" based on Medical-Vocational Rule 202.06. The ALJ found that Rowell had at least a high school education and was able to communicate in English and that his substance abuse disorder was not a contributing factor material to the determination of disability. Therefore, the ALJ made a ruling partially favorable

to Rowell that he became disabled on February 26, 2012—not on the alleged disability onset date, January 1, 2006—and that Rowell was disabled through the date of the decision.

With this background in mind, the Court now turns to Rowell's arguments, which are as follows: (1) The ALJ denied Rowell a fair hearing, because the ALJ failed to order the medical expert subpoenaed per the Appeals Council demand; (2) the ALJ erred in finding that Rowell's education was a high school diploma when it was actually a special education certificate; (3) the ALJ erred in his determination of the degree of Rowell's mental ability/disabilities; and (4) the ALJ erred in offering an unrestricted physically light RFC to the vocational expert—specifically, by not recognizing that Rowell was limited to 4 hours standing during an 8-hour workday, as found by both consultative physicians, Dr. John A. Frenz and Dr. Bruce W. Randolph.

### 1. Whether the ALJ Erred in Not Issuing Subpoena to the Medical Expert

First, Rowell argues that he was denied a fair hearing, because on remand, the ALJ failed to order the medical expert subpoenaed in compliance with the Appeals Council's remand order. Rowell maintains that although the supplemental hearing request was granted pursuant to HALLEX-I-2-5-44, a subpoena was never issued to the medical expert, Dr. Nathan Strahl, for the remanded hearing, and consequently, he was never made available to Rowell for cross-examination. Rowell maintains that the ALJ's partial reliance on Dr. Strahl's expert opinion in forming his decision was error since the ALJ's failure to subpoena Dr. Strahl was the basis for remand in the first place.[2]

The Government argues in response that the Appeals Council's September 2012 remand order did not require the ALJ to issue a subpoena to the medical expert, but instead required the

---

[2] Rowell additionally argues under this section of his brief that the ALJ's stated position on Dr. Strahl's medical opinion was inconsistent with the ALJ's actual ruling. The Court will address this argument within the context of the third issue raised by Rowell: that the ALJ erred in his determination of the degree of Rowell's mental ability/disabilities.

ALJ to "[o]ffer [Rowell] the opportunity for a supplemental hearing pursuant to HALLEX I-2-5-44." *See* R. at 193. The Government maintains that the regulations allow the claimant an absolute right to subpoena a medical expert in order to cross-examine him with regard to a post-hearing report, but that the claimant must file a written request for the issuance of a subpoena at least five days prior to the hearing date. Finally, the Government maintains that no evidence in the record supports that Rowell requested the ALJ to subpoena Dr. Strahl upon remand, and thus that Rowell has not demonstrated harmful error.

The Court finds as follows. During the second proceeding, ALJ Leiner sent interrogatories to Dr. Strahl, requesting his professional opinion in connection with Rowell's Social Security disability claim along with the note: "[P]lease address issues of limitations with or without drugs. *Id.* at 914. Dr. Strahl's responses to the interrogatories were received after the hearing. Dr. Strahl indicated in his responses, *inter alia*, that he was aware his responses were sought in the role of impartial medical expert, that he had neither personally examined Rowell nor previously served as a medical expert for the Social Security Administration for Rowell, and that sufficient objective medical and other evidence allowed him to form opinions about the nature and severity of Rowell's impairments during the relevant time period. *Id.* at 915. Dr. Strahl assessed Rowell's limitations with and without substance abuse and concluded that without substance abuse and some mental treatment Rowell could do simple repetitive routine tasks. *Id.* at 919. Rowell requested a subpoena of Dr. Strahl and a supplemental hearing. ALJ Leiner denied Rowell's request to subpoena Dr. Strahl and conduct a supplemental hearing and issued his decision to deny Rowell's disability claim, basing his decision in part on Dr. Strahl's responses to the interrogatories.

After the first set of hearings, the Appeals Council remanded the case for resolution of the following issue:

> After the hearing, the [ALJ] received medical expert interrogatories[] that were correctly proffered to [Rowell's] representative. On May 9, 2011, the representative requested the subpoena of the medical expert and the conducting of a supplemental hearing. Since the medical expert was not an examining physician, this request was denied. Per HALLEX I-2-5-44, if the claimant/representative requests a supplemental hearing, the ALJ must grant the request unless the ALJ receives additional documentary evidence that supports a fully favorable decision.

*Id.* at 193.

The Appeals Council also offered two detailed instructions to the ALJ for remand:

> (1) offer [Rowell] the opportunity for a supplemental hearing pursuant to HALLEX I-2-5-44; and
>
> (2) [i]f warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Rowell's occupational base . . . . The [ALJ] will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy . . . . Further, before relying on the vocational expert evidence the [ALJ] will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations.

*Id.* at 193–94 (internal citations omitted). The Appeals Council's remand order specifically instructed the ALJ as follows with respect to the subpoena issue: "[O]ffer [Rowell] the opportunity for a supplemental hearing pursuant to HALLEX I-2-5-44." *Id.* at 193.

HALLEX is the *Hearings, Appeals and Litigation Law Manual* of the Social Security Administration. It "conveys guiding principles, procedural guidance and information to the Social Security Office of Hearings and Appeals Staff," but "does not carry the force and effect of

law" and "lacks the administrative formality or other attributes that would justify substantial judicial deference." Carolyn A. Kubitschek & Jon C. Dubin, *Social Security Disability Law and Procedure in Federal Courts* 35–36 (2014). "While HALLEX does not carry the authority of law, [the Fifth Circuit] has held that 'where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required.' " *Newton*, 209 F.3d at 459 (quoting *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981)).

HALLEX I-2-5-44 relates the procedures that must be followed when an ALJ receives answers to interrogatories from a medical expert post-hearing and provides in pertinent part as follows: "Even if the claimant or any appointed representative previously had the opportunity to do so, an ALJ must allow a claimant to propose additional interrogatories to the [medical expert] or request a supplemental hearing to question the [medical expert]. . . . If the claimant requests a supplemental hearing, the ALJ must grant the request, unless the ALJ receives additional documentary evidence that supports a fully favorable decision." In the case *sub judice*, the ALJ on remand allowed Rowell to have a supplemental hearing, per the Appeals Council's remand order (and HALLEX 1-2-5-44).

The Fifth Circuit also has stated that if the "claimant requests, prior to the closing of the record, that a subpoena be issued for the purpose of cross-examining an examining physician, the adjudicator must issue the subpoena"; due process entitles a disability claimant to cross examine individuals whose reports are considered as evidence in the disability determination. *Lidy v. Sullivan*, 911 F.2d 1075, 1077 (5th Cir. 1990). However, the United States Supreme Court has held as follows:

> [A] written report by a licensed physician who has examined the
> claimant and who sets forth in his report his medical findings in his

area of competence may be received as evidence in a disability hearing and, despite its hearsay character and an absence of cross-examination, and despite the presence of opposing direct medical testimony and testimony by the claimant himself, may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant, <u>when the claimant has not exercised his right to subpoena the reporting physician and thereby provide himself with the opportunity for cross-examination of the physician</u>.

*Richardson*, 402 U.S. at 402, 91 S. Ct. 1420 (emphasis added).

The record demonstrates that Rowell was advised of his post-hearing right to request a supplemental hearing and subpoena the medical expert. The Appeals Council stated this in its remand order, and also prior to the supplemental hearing, the ALJ advised Rowell in his hearing notice as follows:

I may issue a subpoena that requires a person to submit documents or testify at your hearing. I will do this if the person has evidence or information that you reasonably need to present your case fully. If you want me to issue a subpoena, you must write to me as soon as possible. I must receive your request no later than [five] days before your hearing. In your request, please tell me:

- What documents you need and/or who the witnesses are;
- The location of the documents or witnesses;
- The important facts you expect the document or witness to prove; and
- Why you cannot prove these facts without a subpoena.

R. at 305–06. Rowell acknowledged receipt of the notice of hearing and indicated therein his agreement to be present at the hearing. *Id.* at 318. Nothing in the record demonstrates that Rowell requested Dr. Strahl be subpoenaed to appear at the hearing.

HALLEX I-2-5-44, which was referenced in the Appeals Council's remand order, provides with respect to subpoenas: "If the [medical expert] declines to appear at a supplemental hearing, the ALJ <u>may consider</u> issuing a subpoena using the instructions in HALLEX I-2-5-78." (emphasis added). According to the clear language in HALLEX I-2-5-44, the ALJ <u>may consider</u>

issuing a subpoena to a medical expert who declines to appear at the requested supplemental hearing if, according to HALLEX I-2-5-78, "reasonably necessary for the full presentation of the case because the document(s) . . . can be expected to prove important facts that cannot be proved without a subpoena" and "the ALJ has exhausted other means of obtaining this evidence or testimony." Nothing in the record indicates that Dr. Strahl declined a request to appear at the hearing, and evidently, the ALJ did not conclude that Dr. Strahl's presence was reasonably necessary for the full presentation of the case.

The Court notes that the aforementioned HALLEX provisions were not quoted in the Appeals Council's remand order, nor is there any clear directive to the ALJ to subpoena the medical expert. Under these circumstances, if Rowell desired to have Dr. Strahl appear at the supplemental hearing, Rowell should have submitted a written request for the issuance of a subpoena to Dr. Strahl at least five days prior to the hearing date. *See* 20 C.F.R. §§ 404.950(d)(2), 416.1450(d)(2);[3] HALLEX I-2-5-78[4]. Rowell apparently did not do so, despite ample notification and opportunity to address the post-hearing evidence. The ALJ did not err by not issuing a subpoena to the medical expert, nor did he err in properly admitting the opinion of the medical expert as an exhibit. *See* R. at 35.

---

[3] Both sections of the CFR provide as follows:

> Parties to a hearing who wish to subpoena documents or witnesses must file a written request for the issuance of a subpoena with the administrative law judge or at one of our offices at least [five] days before the hearing date. The written request must give the names of the witnesses or documents to be produced; describe the address or location of the witnesses or documents with sufficient detail to find them; state the important facts that the witness or document is expected to prove; and indicate why these facts could not be proven without issuing a subpoena.

20 C.F.R. §§ 404.950(d)(2), 416.1450(d)(2).

[4] HALLEX I-2-5-78 provides: "A claimant has a right to request issuance of a subpoena, but the regulations state that he or she must make the request at least [five] days before the hearing date."

In addition, the Court finds that even if Rowell demonstrated that the ALJ failed to follow a particular directive of the Appeals Council or violated HALLEX, Rowell has not established prejudice. Prejudice can be established by showing additional evidence would have been produced if the ALJ had fully developed the record and might have led to a different decision. *See Newton*, 209 F.3d at 458. Rowell has not shown he suffered prejudice as a result of the failure, and thus, he has failed to prove denial of due process in the administrative hearing. *See Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001). Rowell also has not shown that additional evidence would have been produced if the ALJ had subpoenaed the medical expert. Therefore, the Court finds that Rowell's argument in this respect is not well taken.

## 2. Whether the ALJ Erred in Finding That Rowell Had a High School Education

Second, Rowell argues the ALJ erred in finding that Rowell had a high school education, not a special education certificate, and that this error affected the outcome of Rowell's claim. The Court finds this argument to be unavailing, because substantial evidence in the record supports the ALJ's education level finding and, regardless, the finding was not dispositive on the issue of Rowell's disability.

Rowell maintains that the ALJ's finding that he had a high school education was based on Rowell's testimony in the 2013 hearing, but that "[i]t should be abundantly clear by a review of this entire voluminous record that [Rowell] himself could not be counted upon to be consistent in his testimony." Appellant's Mem. Br. Supp. Mot. Appeal [19] at 11. Rowell further argues that the ALJ failed to ask the Vocational Expert at the 2013 hearing any questions concerning Rowell's education, despite the comments in the earlier 2011 hearing supporting that Rowell's education level was limited and the conflicts in the findings of the Vocational Expert at the 2011 hearing, and that the ALJ did not give the Vocational Expert a hypothetical that properly

presented Rowell's education level. Rowell further maintains that the ALJ should have found that Rowell had a limited education based on evidence from the 2011 hearing and Rowell's statements in a Social Security form supporting that Rowell had a special education certificate, not a regular high school diploma. Rowell argues that the ALJ's finding with respect to Rowell's level of education was not supported by substantial evidence in the record.

The Government argues in response that Rowell's argument does not state consequential error since both Grid Rule 202.10 (limited education) and Grid Rule 202.14 (high school education) direct a finding of "not disabled." *See* 20 C.F.R., Pt. 404, Subpt. P, App. 2 §§ 202.10 & 202.14. Second, the Government argues that substantial evidence supports the ALJ's finding that Rowell possessed a high school education, including Rowell's own testimony at the 2013 hearing and reports to other parties. Third, the Government argues that although Rowell had the opportunity to pose a hypothetical question to the Vocational Expert for a person with a limited education, Rowell chose not to do so. Fourth, the Government argues that even if Rowell attended some special education classes in high school, that fact alone is not dispositive that his education was less than high school level.

The Court finds as follows. The ALJ's finding concerning Rowell's level of education was one facet in the fifth step of the evaluation process set forth in 20 C.F.R. § 404.1520(a), when the ALJ determined whether Rowell was able to do any other work considering his RFC, age, education, and work experience. *See Barnhart v. Thomas*, 540 U.S. 20, 25, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) ("the fifth, and final, step requires the [Social Security Administration] to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy"); *Pena v. Astrue*, 271 F. App'x 382, 384 (5th

Cir. 2008) (per curiam) (a "claimant's education is a vocational factor the ALJ considers in determining what jobs a claimant is capable of performing"). The regulations explain:

> The importance of your educational background may depend upon how much time has passed between the completion of your formal education and the beginning of your physical or mental impairment(s) and by what you have done with your education in a work or other setting. Formal education that you completed many years before your impairment began, or unused skills and knowledge that were a part of your formal education, may no longer be useful or meaningful in terms of your ability to work. Therefore, the numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities. The term education also includes how well you are able to communicate in English since this ability is often acquired or improved by education.
>
> . . .
>
> Since the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor. Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language. Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do. . . .
>
> . . .
>
> We will ask you how long you attended school and whether you are able to speak, understand, read and write in English and do at least simple calculations in arithmetic. We will also consider other information about how much formal or informal education you may have had through your previous work, community projects, hobbies, and any other activities which might help you to work.

20 C.F.R. § 416.964(b), *id.* (5)–(6). Thus, the determination of a claimant's education level is not exclusively based upon the literal grade completed, but takes into account other factors.

Pertinent to this case, the regulations describe "limited education" and "high school education" as follows:

> Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.
>
> High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally consider that someone with these educational abilities can do semi-skilled through skilled work.

20 C.F.R. § 416.964(b)(3)–(4).

In reaching his overall decision, the ALJ considered the Medical-Vocational Guidelines and the testimony of the Vocational Expert at the hearing. The ALJ stated in his written opinion that as part of his analysis under step five of the sequential evaluation process, he was required to make a finding on the credibility of statements based on a consideration of the entire case record. In so doing, the ALJ noted, *inter alia*, that Rowell testified that "he finished school in regular classes." R. at 22. The ALJ further noted: "[Rowell's] functional and school performance history contradict his responses to IQ testing." *Id.* at 20. The ALJ concluded in his written opinion: "[Rowell] has at least a high school education and is able to communicate in English (20 C.F.R. [§§] 404.1564 and 416.964)." *Id.* at 24. The ALJ apparently accepted Rowell's testimony concerning his level of education at the 2013 hearing. However, the ALJ's written opinion demonstrates that he also considered in this finding several other pieces of record evidence demonstrating that Rowell's background, experience, and other factors rendered his education level to be high school level based on the Social Security regulations.

One such piece of evidence was a consultative examination report by Joann P. Raby, Ph.D., which is dated September 4, 2009 and is Exhibit 19F. Dr. Raby's report provides that "[Rowell] reports a history of 'special education services.' He reportedly graduated from high school in 1975." *Id.* at 746. The ALJ apparently considered Dr. Raby's report *in toto* and concluded from the report that Rowell "presented no discernable impairment-related mental limitations." *See id.* at 17.

Another such report was a consultative examination by Pamela R. Buck, Ph.D., dated February 2011, which is Exhibit 35F. In that report, Dr. Buck states that "Rowell attended Independence High School and graduated. He stated that he made Cs and Ds. He repeated the 12th grade. . . . He denied other education." *Id.* at 902. The ALJ considered Dr. Buck's assessment of Rowell wherein she stated that Rowell had " 'poor' abilities to perform multiple components of mental functioning." *Id.* at 18. The ALJ wrote that "Dr. Buck's opinion appears generally consistent with [Rowell's] mental capacity at present, and the undersigned on that basis accords it some weight. The undersigned notes, however, that Dr. Buck based her diagnoses and conclusions in pertinent part upon [Rowell's] obviously invalid intelligence testing, [Rowell's] false report to her of his then-current mental health counseling, and his false denial of drug and alcohol abuse." *Id.* at 23–24. The ALJ "accordingly afford[ed] it minimal weight," *id.* at 24, and stated that overall "[Rowell] exaggerated his intellectual disability" and that his "functional and school performance history contradict his responses to IQ testing," *id.* at 20.

Further, the ALJ stated that he considered Dr. Michael Whelan's report dated January 12, 2008, which is Exhibit 6F. Dr. Whelan states in one portion of his report that "[Rowell] reports [s]pecial [e]ducation during his [twelve] years of schooling," *id.* at 629, but states in another portion "I think [Rowell] exaggerates at times when I attempt to assess his cognitive

functioning," *id.* at 630. According to the ALJ, Dr. Whelan concluded that "[Rowell's] mental symptoms not in remission derived in all likelihood from his continuing substance abuse." *Id.* at 22 (citing *id.* at 631).

The Vocational Expert's testimony in the 2011 hearing was that "[t]he record reflects that [Rowell] has a high school certificate. . . . [ H]e did endure and complete special education classes. There is no training beyond the high school certificate. . . . I would say more than likely [the overall extent of Rowell's education is] in the limited area, seventh to eleventh grade, somewhere along in there, Your Honor." *Id.* at 98, 99. In addition, in Rowell's disability report completed by Rowell himself, which is Exhibit 20E, Rowell states that he completed the twelfth grade at his high school, attended special education classes, and graduated with a special education certificate. *Id.* at 522. Finally, a Communicare Intake Assessment with Rowell includes the following statement about Rowell's education history: "[Rowell] graduated from twelfth grade at Independence High School. [Rowell] reported that he was enrolled in special education classes." *Id.* at 827. The record also reflects Rowell's concessions that he could independently manage his appointments, his bills, and his medications; that he attended Bible classes every Wednesday; and that he had a driver's license at one time, though it expired and he never obtained a new one. *Id.* at 89–91.

It is clear to this Court that the ALJ's finding concerning Rowell's education level was based on substantial evidence in the record. The ALJ's written opinion demonstrates that he considered the credibility of each source of evidence and made an individualized determination as to the proper weight afforded to each, based on its internal and external consistency and level of detail. It is the ALJ's role to make credibility determinations, and those determinations are entitled to "great deference." *McKnight v. Astrue*, 340 F. App'x 176, 181 (5th Cir. 2009) (per

curiam) (citing *Newton*, 209 F.3d at 459). Although some record evidence contradicts the ALJ's finding of Rowell's education level, as long as substantial evidence supports the decision, the Court will not disturb the ALJ's finding. "We will not re-weigh the evidence, try the questions *de novo*, or substitute our judgment for the Commissioner's, even if we believe the evidence weighs against the Commissioner's decision." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (citing *Newton*, 209 F.3d at 452). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). In this case, credible evidentiary choices support the ALJ's determination of Rowell's education level.

The Court further finds that, as the Government argues, Rowell's counsel did not provide a hypothetical to the Vocational Expert at the hearing regarding Rowell's education level, despite an opportunity to do so. *See Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000). Finally, any conflicts of evidence on the issue were "for the Commissioner, not the courts, to resolve." *See Perez*, 415 F.3d at 461. The ALJ resolved the conflicts of evidence on Rowell's level of education by deciding to give weight to Rowell's testimony at the 2013 hearing. An ALJ may rely on a claimant's own testimony regarding his educational status. *See id.* at 463; *see also* 20 C.F.R. § 404.1740(b)(2)(ii) (representatives have an affirmative duty to present relevant evidence about a claimant's education and training). In addition, any finding in prior hearings concerning Rowell's education level were not binding on the ALJ, because the previous two administrative decisions had been vacated. *See Houston v. Sullivan*, 895 F.2d 1012, 1015 (5th Cir. 1989); *see also* 20 C.F.R. § 404.977(b) (on remand, the ALJ "may take any additional action that is not inconsistent with the Appeals Council's remand order"). In sum, substantial evidence in the record supports the ALJ's finding as to Rowell's education level.

Furthermore, the Court notes that even if the ALJ had found Rowell had a limited education, that finding would not have changed the result. As stated above, in his ruling, the ALJ relied on record evidence and the Medical-Vocational Guidelines (the "Grid Rules" or "Guidelines"). The Grid Rules are a matrix system for handling claims that involve substantially uniform levels of impairment. *See* 20 C.F.R., Pt. 404, Subpt. P, App 2. The Grid Rules were promulgated to "improve both the uniformity and efficiency" of the five-step determination. *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983).

> These guidelines relieve the Secretary of the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy. They consist of a matrix of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform. If such work exists, the claimant is not considered disabled.

*Id.* at 461–62, 103 S. Ct. 1952 (footnotes omitted).

The Grid Rules categorize jobs by their physical-exertional requirements and consist of three separate tables—one for each category: "[m]aximum sustained work capacity limited to sedentary work," "[m]aximum sustained work capacity limited to light work," and "[m]aximum sustained work capacity limited to medium work." 20 C.F.R., Pt. 404, Subpt. P, App. 2, R. 200.00. "Where the findings of fact made with respect to a particular individual's vocational factors and [RFC] coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." *See* 20 C.F.R., Pt. 404, Subpt. P, App. 2; *see Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) ("the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the

claimant can perform"). However, where the claimant's characteristics do not "coincide exactly" with a Grid Rule, the ALJ should introduce expert vocational testimony to further assist in his "Grids framework" guided analysis. *See Lawler v. Heckler*, 761 F.2d 195, 197–98 (5th Cir. 1985).

Considering the ALJ's other findings on each of the vocational factors and RFC, Rowell was "not disabled" prior to the established onset date, regardless of whether the ALJ found he had a limited education or high school education. Thus, this purported factual dispute is of no consequence. In this case, Rowell is appealing the finding that he was not disabled prior to February 26, 2012 and now says he was actually disabled as of February 26, 2007. Because the ALJ found Rowell was disabled beginning February 26, 2012, the Court need only look to the ALJ's analysis of Rowell's claim as it pertains to his disability status prior to February 26, 2012. Given the Guidelines and the ALJ's findings in each category, even if the ALJ had found that Rowell had a limited education, Rowell still would not have been disabled under the Grid Rules prior to February 26, 2012, as explained below.

In considering the Guidelines, as well as the Vocational Expert's responses to the hypothetical, the ALJ determined that prior to February 26, 2012, Rowell had the RFC to perform light work with additional limitations and could perform only routine, repetitive tasks, with occasional interaction with coworkers. The ALJ concluded that these limitations precluded Rowell from performing his past relevant work, because the demands of his past relevant work exceeded the RFC. The ALJ also concluded that prior to the established onset date of disability, considering Rowell's age, education, work experience, and RFC, Rowell was capable of making a successful adjustment to other work that existed in significant numbers in the national economy and thus that Rowell was "not disabled" under the Guidelines, 20 C.F.R., Part 404, Subpart P,

Appendix 2. The ALJ further concluded that prior to February 26, 2012, jobs existed in significant numbers in the national economy that Rowell could have performed, and that his age category was an individual closely approaching advanced age.

Even if a claimant is closely approaching advanced age, has a limited or less education, and has no relevant previous work experience (or unskilled work experience), Guideline 202.10 ("the light grid") directs a conclusion of not disabled. 20 C.F.R., Pt. 404, Subpt. P, App. 2, T. 2. Whether he graduated from high school or failed to graduate but is literate and able to communicate in English, the "not disabled" result is the same. Therefore, although it is clear to this Court that substantial evidence supported the ALJ's finding of Rowell's education level, regardless of whether the finding had been high school level or limited education level, the result is unchanged: Rowell was not disabled under the Grid Rules prior to the established onset date of February 26, 2012.

### 3. Whether the ALJ Erred in His Determination of Rowell's Mental Ability/Disabilities

Third, Rowell argues that the ALJ erred in his determination of the degree of Rowell's mental ability/disabilities, because "a voluminous amount of evidence indicating [Rowell's] severe mental difficulties while often not even mentioning the issues of alcohol or drugs would show that this decision concerning his mental abilities could not have been based upon substantial evidence." Appellant's Mem. Br. Supp. Mot. Appeal [19] at 27. Rowell maintains that the ALJ's determination with respect to his mental function does not make sense and that several of the ALJ's statements in his written opinion cannot be reconciled. Rowell further maintains that the ALJ disregarded certain opinions in the record that did not coincide with his finding and that evidence in the record supports that although Rowell desires to work, he has limited ability in focusing and completing simple and complex tasks that renders him unable to

work. Rowell also maintains that the ALJ wavers on whether drugs and alcohol use were material to the disability decision. Rowell challenges the ALJ's findings that certain opinions were afforded "some weight" but were actually disregarded in the determination. Rowell further maintains that the ALJ should not have considered Rowell's testimony to be credible given his limited mental abilities. Rowell cites to findings made by the Social Security Administration in various sessions supporting that he has a mental disability. Overall, Rowell states that substantial evidence does not support the ALJ's finding. The Government argues in response that the ALJ properly assessed the medical opinions concerning Rowell's mental functioning and that the weight of the evidence shows that Rowell's alleged mental limitations were greatly exaggerated and did not prevent him from performing work prior to February 2012.

The Court finds as follows. As stated above, in this case, Rowell is appealing the finding that he was not disabled prior to February 26, 2012. He maintains he was actually disabled as of February 26, 2007. Because the ALJ found Rowell was disabled beginning February 26, 2012, the Court need only look to the ALJ's analysis of Rowell's claim as it pertains to his disability status prior to February 26, 2012.

The ALJ's finding concerning Rowell's mental ability/disabilities was one facet in the second and third steps of the evaluation process set forth in 20 C.F.R. § 404.1520(a), when the ALJ determined whether Rowell had a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [Rowell's] physical or mental ability to do basic work activities" and whether the impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listed impairment. *See Barnhart*, 540 U.S. at 24, 124 S. Ct. 376 (quoting 42 U.S.C. §§ 404.1520(c), 416.920(c) (quotation marks omitted)); *see also* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. In

addition, determination of mental functioning is a component of the claimant's RFC and figures in the determination under step five of the sequential evaluation process. In this case, because the ALJ found that Rowell was disabled as of the established onset date and medical evidence supported a substance abuse disorder, the ALJ had to also determine both the extent to which Rowell's mental and physical limitations would remain if Rowell stopped the substance abuse and whether the substance abuse disorder was a contributing factor material to the determination of disability.

The ALJ found that Rowell's mental functioning included "mild restriction in activities of daily living[;] mild difficulties in maintaining social functioning[;] moderate difficulties in maintaining concentration, persistence[,] or pace; and no episodes of decompensation, each of extended duration." R. at 21. The ALJ found that Rowell could "perform all activities of daily living, but may occasionally lack motivation"; "engages in regular social activities"; and "can maintain concentration for a reasonable period of time, but may be forgetful at times." *Id.* The ALJ concluded that Rowell's mental impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1, because Rowell "has not had repeated episodes of decompensation (12.04C1); a minimal increase in mental demands or change in the environment would not be predicted to cause the claimant to decompensate (12.04C2); and[ ] [Rowell] has not shown an inability to function outside of a highly supportive living arrangement (12.04C3)." *Id.* The ALJ found that "[Rowell's] substance abuse disorder does not meet or medically equal the requirements for Listing 12.09" in that he does not have organic mental disorders, depressive syndrome, anxiety disorders, personality disorders, peripheral neuropathies, liver damage, gastritis, pacreatitis, or seizures. *Id.* The ALJ stated that the "substantial record evidence" supports that Rowell would suffer only moderate

24

limitations in mental functioning "if he ceased his extensive and ongoing substance abuse." *Id.*
at 22–23. The ALJ further found that "[Rowell's] drug and alcohol use is not material to the
determination of disability. . . . [H]e also engaged in an obvious pattern of malingering and
exaggeration of symptoms. Significantly, he exaggerated his intellectual disability. . . . The
undersigned finds that [Rowell] was not disabled prior to age 55. His [RFC], even when abusing
alcohol and drugs[,] did not rise to a disabling level." *Id.* at 20.

In the determination of Rowell's RFC, the ALJ took into account Rowell's testimony and
his mother's third-party function report (Exhibit 32E). The ALJ stated that Rowell's testimony
concerning "the intensity, persistence[,] and limiting effects of [his] symptoms are not entirely
credible for the reasons explained in this decision"—thus indicating that contrary to Rowell's
arguments in his brief the ALJ doubted Rowell's credibility as to his symptoms. *See id.* at 22.
Accordingly, the ALJ turned to "various opinions as to the limitations imposed upon [Rowell] by
his impairments," including the admission information to the North Mississippi State Hospital
(Exhibits 2F and 31F), Baptist Memorial Hospital (Exhibit 15F), Delta Medical Center (Exhibit
26F), and North Oak Hospital (Exhibits 33F and 40F); the new intake assessment by
Communicare (Exhibit 27F); reports by Dr. Michael Whelan (Exhibit 6F), Joann P. Raby, Ph.D.
(Exhibit 19F), Communicare case manager Gwendolyn Jones (Exhibit 25F), Pamela R. Buck,
Ph.D. (Exhibit 35F), Dr. John A. Frenz (Exhibit 13F), Dr. Bruce W. Randolph (Exhibit 34F), and
the State agency psychologist Cal Vanderplate, Ph.D. (Exhibits 7F and 8F); and responses to
written interrogatories by Dr. Nathan Strahl (Exhibit 38F).

The ALJ states in his opinion that he in part relied upon Dr. Strahl's report. Rowell
argues that the ALJ's stated position on Dr. Strahl's opinion is inconsistent with the ALJ's actual
ruling. Rowell maintains that the ALJ states in his opinion that "[Dr. Strahl's] opinion appears

consistent with the record evidence," and "[t]he undersigned accordingly affords weight to the opinion of Dr. Strahl." Appellant's Mem. Br. Supp. Mot. Appeal [19] at 31. Rowell then points to Dr. Strahl's opinion that Rowell was disabled with his substance abuse and would meet Listing 12.03 plus 12.09, but that if Plaintiff quit abusing these substances, he would have only mild or moderate restrictions. Rowell maintains that these two statements cannot be reconciled. Rowell further maintains that the ALJ's finding is in contradiction to Dr. Strahl's opinion: "The undersigned disagrees with Dr. Strahl as to whether drugs or alcohol use are material as discussed below. . . . [Rowell's] substance use disorder(s) is not a contributing factor material to the determination of disability." *See* R. at 18, 26. Rowell maintains that the ALJ cannot simultaneously state that he agrees with Dr. Strahl's opinion that Rowell would have mild to moderate mental problems with the substance abuse, but then state that Rowell's substance abuse is immaterial to the partially favorable finding. Rowell maintains that "such a contradictory finding could not have been based upon substantial evidence." Appellant's Mem. Br. Supp. Mot. Appeal [19] at 8.

The Court finds as follows. The ALJ states in his opinion that he "afford[ed] weight to the opinion of Dr. Strahl" and that "[h]is assessment of merely 'mild to moderate' mental limitations in the absence of substance abuse likewise appears generally consistent with the record evidence." R. at 24. However, the ALJ also states that he "disagrees with Dr. Strahl as to whether drug and alcohol use are material" to the determination of disability and opines that although "[i]t is clear from the record that [Rowell] has a definitive history of abuse . . . . [H]e also engaged in an obvious pattern of malingering and exaggeration of symptoms" including of "his intellectual disability." *Id.* at 18, 20.

Dr. Strahl assessed Rowell's limitations with and without substance abuse and concluded that without substance abuse and some mental treatment, Rowell could do simple repetitive routine tasks. *Id.* at 919. Dr. Strahl stated that although "mental health is the primary consideration," Rowell's substance abuse "overshadow[s] the psychological symptoms and worsen[s] symptoms. Also, low IQ . . . demonstrates malingering." *Id.* at 915. Dr. Strahl stated that with alcohol and drugs, Rowell's functional limitations were marked in the areas of restriction of activities of daily living; difficulties in maintaining social functioning; difficulties in maintain concentration, persistence, or pace; and repeated episodes of decompensation, each of extended deterioration. *Id.* at 916. However, Dr. Strahl further stated that without alcohol and drug use, Rowell's functional limitations in those same areas were only mild to moderate. *Id.* Thus, Dr. Strahl's opinion supports the ALJ's finding that Rowell had only mild to moderate functional limitations without substance abuse. The Court finds that the ALJ's reliance on Dr. Strahl's opinion is appropriate. Apparently, in view of the evidence in the record, the ALJ concluded that Dr. Strahl's opinion was entitled to weight insofar as Rowell's mental limitations with and without substance abuse. However, the ALJ disagreed with Dr. Strahl with respect to whether Rowell's substance abuse issues were material to the disability determination: Dr. Strahl considered Rowell's substance abuse issues to be material; the ALJ did not. Rowell's argument that if the ALJ accorded the opinion "some weight he would have had to follow his opinion" is not well taken. The ALJ's position on Dr. Strahl's opinion makes sense and is consistent with the ALJ's conclusion and findings.

Rowell also argues that the ALJ "skimmed over" case manager Gwendolyn Jones's opinion in her August 18, 2011 questionnaire responses. However, as the Government argues, a case manager is not an acceptable medical source to provide medical evidence of Rowell's

impairment. The regulations state that "all evidence from nonexamining sources" is "opinion evidence." 20 C.F.R. § 404.1527(e). The regulations further state: "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his]physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). And as the Government further argues, the ALJ was not required to give weight to an opinion by another person that a claimant was disabled or unable to work, because that was a legal conclusion reserved for the Commissioner. *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); *Tamez v. Sullivan*, 888 F.2d 334, 336 n.1 (5th Cir. 1989). *See also* 20 C.F.R. §§ 404.1527(d) ("Opinions on some issues, such as the examples that follow, are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability"—for instance, opinions as to whether or not the claimant is disabled), 416.927(e).

Rowell further argues that the ALJ gave minimal weight to State agency psychologist Dr. Scates's opinion but ultimately found that drugs and alcohol were "not a factor in the disability decision. . . . Therefore[,] [the ALJ] agreed with Dr. Scates's assessment in his final conclusion while at the same time granting it minimal weight." Appellant's Mem. Br. Supp. Mot. Appeal [19] at 14. Rowell reasons "[t]his makes absolutely no sense." *Id.* The ALJ wrote in his opinion: "The undersigned affords minimal weight to Dr. Scates's opinion [that Rowell's drug and alcohol abuse was not established as material as of December 2009] because the extensive documentary record summarized herein demonstrates without reasonable question that the issue of [Rowell's] drug and alcohol abuse has constituted an overwhelming component material to

the determination of his disability." R. at 23. Later, the ALJ stated in his opinion that "[Rowell's] drug and alcohol use is not material to the determination of disability." *Id.* at 20. Although this statement seemingly conflicts with the earlier statement, it is followed by the qualifying statement: "It is clear from the record that [Rowell] has a definitive history of abuse. However, he also engaged in an obvious pattern of malingering and exaggeration of symptoms." *Id.* In the opinion of this Court, the ALJ's statements are consistent: Although Rowell engaged in drug and alcohol abuse, and that definitely was an important consideration in the disability determination, it was not dispositive to the disability determination, given the pattern of malingering and exaggeration of symptoms. Dr. Scates's opinion offers evidentiary support to some of the findings of the ALJ.

Rowell further argues that Dr. Buck's opinion (Exhibit 36F) is the most important opinion upon which the ALJ should have based his determination of Rowell's mental functioning, because "[a] cursory review of all of the examinations would show that only [Dr. Buck] gave the time and attention required to make these determinations, and she gave a detailed four[-]page report as well as the Medical Source Statement that none of of the others did." Appellant's Mem. Br. Supp. Mot. Appeal [19] at 17. Rowell maintains that Dr. Buck's opinion was that Rowell was "obviously impaired" and that "[h]is statements, descriptions of symptoms, cooperativeness[,] and motivation are felt to have been generally reliable during this assessment." *See* R. at 901. Rowell further maintains that Dr. Buck's opinion was that Rowell's IQ test revealed that he was in the "mild range of mental retardation" and that Dr. Buck's mental medical source statement was that almost all of his factors were poor, including poor "ability to behave in an emotionally stable manner" and "relate predictably in social situations." *See id.* at 903–04, 907.

The ALJ stated in his written opinion that he considered the opinion of Dr. Buck, that it was "generally consistent with [Rowell's] mental capacity at present," and that he accorded it "some weight." *Id.* at 23. The ALJ considered Dr. Buck's assessment of Rowell which the ALJ stated was that Rowell had " 'poor' abilities to perform multiple components of mental functioning." *Id.* at 18. The ALJ wrote that "Dr. Buck's opinion appears generally consistent with [Rowell's] mental capacity at present, and the undersigned on that basis accords it some weight. The undersigned notes, however, that Dr. Buck based her diagnoses and conclusions in pertinent part upon [Rowell's] obviously invalid intelligence testing, [Rowell's] false report to her of his then-current mental health counseling, and his false denial of drug and alcohol abuse." *Id.* at 23–24. The ALJ "accordingly afford[ed] it minimal weight," *id.* at 24, and stated that overall "[Rowell] exaggerated his intellectual disability" and that his "functional and school performance history contradict his responses to IQ testing," *id.* at 20. Although Dr. Buck clearly expressed in her report that she felt Rowell was "generally reliable during th[e] assessment" and "put forth good effort," *id.* at 901, substantial record evidence supports the ALJ's conclusion that Rowell was not entirely straightforward about his mental functioning.

Further, the ALJ stated that he considered the opinion of Dr. Raby (Exhibit 19F) insofar as it stated that Rowell "presented no significant discernable impairment-related mental limitations." *Id.* at 23. The ALJ stated in his opinion that Dr. Raby's opinion "appears generally consistent with the preponderance of the record evidence if [Rowell] ceased his substance abuse . . . and the undersigned on that basis accords it some weight." *Id.* Rowell argues that the ALJ's statement that he gave Dr. Raby's opinion "some weight" but the fact that he did not accept it "makes no sense at all, unless some weight in this ALJ's view means little or no weight." Appellant's Mem. Br. Supp. Mot. Appeal [19] at 12. The Court finds that the ALJ's statements

with respect to Dr. Raby's opinion are consistent with the record evidence. The ALJ apparently agreed with Dr. Raby's opinion insofar as it pertained to Rowell when he was not engaging in substance abuse.

The Fifth Circuit has stated: "[A]n impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on an individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education[,] or work experience." *Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). The ALJ's opinion is clear that although Rowell experienced some limitations in mental functioning, such limitations were not to the extent that they would have interfered with Rowell's ability to work prior to the established onset date of February 26, 2012. The references in the record to Rowell's negative mental functioning "did not create evidence sufficient to have suggested to the ALJ that a mental impairment existed such that the ALJ had a duty to develop the possibility of [Rowell] having a mental disability." *See Bontke v. Apfel*, 189 F.3d 467, 1999 WL 511514, at *1 (5th Cir. June 30, 1999) (per curiam). In sum, the Court finds that substantial evidence in the record supports the ALJ's determination on Rowell's mental functioning and that the determination should not be disturbed.

### 4. Whether the ALJ Erred in Offering a Physically Light RFC in His Hypothetical to the Vocational Expert

Fourth, Rowell argues that the ALJ erred in offering an unrestricted physically light RFC in his hypothetical to the Vocational Expert—specifically, by not recognizing or acknowledging that Rowell was limited to four hours of standing during an eight-hour workday, as found by both consultative physicians, Dr. John A. Frenz and Dr. Bruce W. Randolph. Rowell maintains that this standing limitation would have eliminated the jobs suggested by the Vocational Expert. In addition, Rowell maintains that the ALJ erred in not ordering a new consultative examination,

since the two consultative examinations had been conducted, respectively, five years and two years prior to the date of the hearing. Rowell contends that the ALJ wrongfully relied upon these consultative examinations to establish a light RFC. Rowell further contends that a light job normally requires six, not four, hours of standing.

The Government argues in response that substantial evidence supports the ALJ's finding that Rowell retained the RFC to perform a reduced range of light work based on treating, examining, and non-examining medical sources and other evidence of record. The Government further argues that despite Rowell's claim that he is unable to perform more than sedentary work, Rowell's counsel did not pose a hypothetical to the Vocational Expert with limitation to the sedentary level, and that despite the opportunity afforded by the ALJ to Rowell's counsel to ask questions about Rowell's RFC, Rowell's counsel chose not to do so. Finally, the Government argues that the ALJ's hypothetical questioning of the Vocational Expert reasonably incorporated "all disabilities of [Rowell] recognized by the ALJ." *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). The Government contends that if an impairment is not recognized by an ALJ, its omission cannot render the hypothetical question defective under the *Bowling* standard. The Government maintains that the ALJ was not required to adopt Rowell's subjective complaints of disabling pain and inability to perform light work as true when objective evidence in the record did not support Rowell's allegations.

The Court finds as follows. After the ALJ conducts step three of the sequential analysis, which is "whether the claimant's impairment meets or equals an impairment listed in the regulations," and before the ALJ conducts step four of the sequential analysis, which is "whether the claimant is capable of returning to his previous work," the ALJ must evaluate the claimant's RFC. *Hamilton-Provost v. Colvin*, 605 F. App'x 233, 236 (5th Cir. 2015) (per curiam) (citing

32

*Perez*, 415 F.3d at 461). The RFC is "a determination of the most the claimant can still do despite his physical and mental limitations." *Perez*, 415 F.3d at 461–62. "The RFC is used at step four to determine if the claimant can continue to perform his past relevant work; at step five, the RFC is used to determine whether the claimant is capable of performing any other work." *Id.* at 462. "The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step." *Id.* at 461.

In the case *sub judice*, the ALJ found at step three that Rowell's impairments did not meet or equal impairments listed in the regulations. The ALJ then assessed Rowell's RFC, finding: "[S]ince January 1, 2006, [Rowell] has the [RFC] to perform light work, with additional limitations. He can perform only routine, repetitive tasks, with occasional interaction with coworkers." R. at 21.[5] The ALJ concluded:

> [Rowell] had mild to moderate indications of physical limitations during consultative examinations. The limitation to light exertion grants the benefit of the doubt to [Rowell]. Likewise, [Rowell] showed the mental ability to perform a great degree of mental tasks. He is at least able to perform at the unskilled level of work. He has demonstrated the ability to function around others through his regular social activity. There is no credible evidence to support a more limiting [RFC] than established herein.

*Id.* at 24.

---

[5] The regulations classify jobs as sedentary, light, medium, heavy, and very heavy, and define each classification in the context of disability determinations. *See* 20 C.F.R. § 404.1567. Pertinent to the ALJ's RFC finding in this case, the regulations define light work as follows:

> Light work involves lifting no more than [twenty] pounds at a time with frequent lifting or carrying of objects weighing up to [ten] pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

Based on this RFC, the ALJ found that Rowell was not capable of performing his past relevant work. Additionally, the ALJ found that prior to February 26, 2012, the transferability of job skills was not material to the disability determination, because Rowell was disabled under the Guidelines.

The Court concludes that substantial evidence supports the Commissioner's decision with respect to Rowell's RFC. In making the RFC determination, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. [§§] 404.1529 and 416.929 and SSRs 96-4p, 96-5p[,] and 06-3p." *Id.* at 21. The ALJ also stated that he considered the following numerous specific testimony and record evidence in this determination: Rowell's testimony at the hearing, Rowell's mother's third-party function report dated August 2011 (Exhibit 32E); the consultative examination of Dr. John Frenz (Exhibit 13F); the opinion of Dr. Michael Whelan (Exhibit 6F); the assessment of the State agency psychologist Cal Vanderplate, Ph.D. (Exhibits 7F and 8F); the opinion of Joann P. Raby, Ph.D. (Exhibit 19F); the opinion of the State agency psychologist Amy Hudson, Ph.D. (Exhibit 22F); the opinion of Case Manager Gwendolyn Jones (Exhibit 25F); the opinion of State agency psychologist Sharon Scates, Ph.D. (Exhibit 28F); the consultative examination of Dr. Bruce W. Randolph (Exhibit 34F); the consultative examination of Pamela R. Buck, Ph.D. (Exhibit 36F); and the opinion of medical expert Dr. Nathan Strahl (Exhibit 38F). It is clear to the Court that in assessing Rowell's RFC, the ALJ noted and thoroughly discussed the different opinions in the record concerning Rowell's physical limitations.

One such report was the consultative examination of Dr. Frenz dated September 28, 2008. In that report, Dr. Frenz stated that Rowell could ambulate "without the need of any

assistive device, handheld or otherwise, nor does it appear that one would be helpful. Normal gait is demonstrated, able to walk flat and for at least several steps in tandem, up on heels or toes, and can squat and arise without assistance." R. at 667. Dr. Frenz also indicated Rowell's standing/walking were affected by impairment, that Rowell could stand and/or walk a total of four hours in an eight-hour workday, and that Rowell could only stand and/or walk without interruption for "1/6." *Id.* at 669–70. Dr. Frenz stated that Rowell could never climb, never balance, occasionally stoop, never crouch, occasionally kneel, and occasionally crawl. *Id.* at 670. Finally, Dr. Frenz stated that Rowell had the following environmental restrictions caused by his impairment: heights, moving machinery, and chemicals.

Rowell argues that the ALJ ignored the four-hour standing restriction assessed by Dr. Frenz that would preclude the performance of light work. Rowell further states that it is unclear from the consultative examination notes whether Dr. Frenz was referring to 1/6 of an eight-hour day (that is, 1 1/3 of an hour) or 1/6 of an hour (that is, ten minutes). The first interpretation would mean Rowell could stand for four hours in an eight-hour workday for only ten minutes at each time. Rowell further states the ALJ erred in not mentioning the physical limitations assessed by Dr. Frenz in the written opinion.

Although it is certainly unclear how Dr. Frenz meant "1/6" in his report, it is clear to this Court that the ALJ's RFC finding was supported by substantial evidence, including Dr. Frenz's report. As the ALJ states in his written opinion, "[Dr. Frenz] submitted a medical source statement wherein he assessed [Rowell] with the ability to perform work at the light level of exertion" and the "ability to perform a range of light work." *Id.* at 19, 22.

Rowell further argues that the ALJ should have incorporated some of the physical limitations expressed by Dr. Frenz, particularly the four-hour standing limitation, in the

hypothetical the ALJ posed to the Vocational Expert. The ALJ gave the following hypothetical

to the Vocational Expert at the hearing:

> [I]f we had an individual of Mr. Rowell's age, education, and work
> experience limited to light work, who was able to do routine,
> repetitive tasks[,] with only occasional interaction with the public
> and only interaction with coworkers, would there be jobs available
> in either the regional or national economy such an individual
> would still be able to do?

*Id.* at 130. The Vocational Expert answered "yes" and then listed positions that Rowell might be

able to perform: "housekeeping cleaner," "wiper," and "small products assembler." *Id.*

The Fifth Circuit has stated:

> Unless the hypothetical question posed to the vocational expert by
> the ALJ can be said to <u>incorporate reasonably all disabilities of the
> claimant recognized by the ALJ</u>, and the claimant or his
> representative is afforded the opportunity to correct deficiencies in
> the ALJ's question by mentioning or suggesting to the vocational
> expert any purported defects in the hypothetical questions . . . a
> determination of non-disability based on such a defective question
> cannot stand.

*Bowling*, 36 F.3d at 436 (emphasis added); *see also Vaught v. Astrue*, 271 F. App'x 452, 455

(5th Cir. 2008) (per curiam).

As stated above, substantial evidence supports the ALJ's RFC finding. The ALJ

considered Rowell's testimony and medical records in determining his RFC. *See Reynaud v.

Astrue*, 226 F. App'x 401, 404 (5th Cir. 2007) (per curiam) (ALJ did not commit error when he

considered claimant's testimony and medical records to determine RFC, which was then

included in hypothetical question). Additionally, the ALJ properly considered Rowell's RFC

and incorporated the physical and mental limitations in his hypothetical to the Vocational Expert;

he thus "incorporate[d] reasonably all disabilities of [Rowell] recognized by the ALJ." *See

Bowling*, 36 F.3d at 436.

The Court further finds that, as the Government argues, Rowell's counsel did not provide a hypothetical to the Vocational Expert at the hearing incorporating additional physical limitations, despite an opportunity to do so. *See Wise v. Barnhart*, 101 F. App'x 950, 951 (5th Cir. 2004) (per curiam) ("Thus, even assuming, arguendo, that the [ALJ's] hypothetical was deficient in the respects urged on appeal, because [Rowell's] representative was afforded an opportunity to correct any perceived deficiencies, there is no reversible error."). In sum, the ALJ's hypothetical question to the Vocational Expert was proper and did not constitute reversible error. *See Bowling*, 36 F.3d at 436.

Another such report considered by the ALJ in the RFC determination was the consultative examination of Dr. Randolph dated February 7, 2011. Dr. Randolph stated that Rowell was "able to walk without any assistive device[,] though he has a limp. He is limited in walking on his heels and toes but can stand on one leg, can rise from a squatting position, [and] is able to squat[] and bend and twist." R. at 895. In addition, Dr. Randolph stated that Rowell could do basic lifting and stand or walk for a total of four hours in an eight-hour workday and could do so without interruption for thirty minutes. *Id.* at 897. The ALJ stated in his written opinion that Dr. Randolph assessed Rowell with "the ability to perform a range of light work," that Dr. Randolph's opinion "appears generally consistent with the preponderance of the record evidence to the extent that it finds [Rowell] not disabled based upon physical issues," and that the ALJ "accordingly affords it weight." *Id.* at 23. The ALJ also stated that Rowell "falsely denied to Dr. Randolph that he engaged in drug or alcohol abuse" and "conceded significantly that he could walk one mile and could lift and carry [twenty-five] pounds." *Id.* at 19.

Rowell argues that Dr. Randolph's consultative examination was not entitled to the same weight as Dr. Frenz's consultative examination. Rowell points to Dr. Randolph's statements that

the limitations indicated were normally expected from the type and severity of Rowell's diagnosis, that the diagnoses were not confirmed by objective findings, and that his opinion was based primarily on Rowell's subjective complaints. *See id.* at 900. Rowell then contrasts this with Dr. Frenz's statements that the limitations indicated were normally expected from the type and severity of Rowell's diagnoses, that the diagnoses were confirmed by objective findings, and that his opinion was not based primarily on Rowell's subjective complaints. *See id.* at 671. Rowell maintains that the two opinions were not both based upon objective findings and should not have been given equal weight by the ALJ.

The Court finds that the ALJ adequately considered the distinctions of the two reports in his RFC determination, which as stated, was supported by substantial evidence in the record. In addition to these two reports, other evidence cited by the ALJ supporting the light RFC includes a lumbar x-ray performed in conjunction with Dr. Frenz's consultative examination which showed "very mild component of multilevel degenerative disk disease and "moderately advanced degenerative facet changes," *id.* at 673, as well as an x-ray of Rowell's ankle following a fracture and dislocation of his right ankle showing satisfactory alignment and "excellent healing of the fractures," *id.* at 739.

Finally, the Court addresses Rowell's argument that the ALJ erred in not ordering a new consultative examination, given that the two examinations were at the time of the hearing four years old and three years old, respectively. An ALJ has the discretion to order a consultative examination. *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989). An examination at government expense is not required unless the record establishes that such an examination is necessary to enable the Secretary to make a decision on disability. *Id.*; *see* 20 C.F.R. § 416.919a(b) (the Commissioner may purchase a consultative examination to try to resolve an

inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on a claim). Although the ALJ has a duty to develop the record and assist a claimant in obtaining medical records from his treating sources, the claimant bears the burdens of proving his disability and supplying records of his medical examination and treatment during the relevant period. *See* 20 C.F.R. § 404.1512; *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). The regulations provide in pertinent part:

> [The claimant] must bring to [the Commissioner's] attention everything that shows that [he is] . . . disabled. This means that [he] must furnish medical and other evidence that we can use to reach conclusions about [his] medical impairment(s) and, if material to the determination of whether [he is] . . . disabled, its effect on [his] ability to work on a sustained basis. We will consider only impairment(s) [he says he has] or about which we receive evidence.

20 C.F.R. §§ 416.912(a), 404.1512(a). Rowell, who was represented by counsel at the hearing, did not request a consultative examination, nor did he apparently challenge the record as being deficient.

The record does not demonstrate that a new consultative examination was necessary to make the disability determination. In the case *sub judice*, the ALJ properly evaluated Rowell's impairments and the completeness of the record before making the disability determination. Finally, Rowell has failed to establish any prejudice from this asserted error. *See Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).

Because the ALJ did not err on any of the points raised by Rowell, this Court finds that the decision of the Commissioner should be affirmed.

### D. Conclusion

In sum, based upon a careful review of the record, the briefs, the hearing, and applicable law, the Court concludes both that substantial evidence in the record supported the

Commissioner's decision that Rowell was not disabled prior to the established onset date of February 26, 2012, and that the Commissioner used proper legal standards in evaluating the evidence. *See Robinson v. Apfel*, 220 F.3d 584 (5th Cir. 2000). Thus, the decision of the Commissioner is AFFIRMED.

A separate order and judgment in accordance with this opinion shall issue this day.

THIS, the 3rd day of November, 2015.

_____
SENIOR U.S. DISTRICT JUDGE